## THE LEWISTON.

### GREEN v. CARGO OF THE LEWISTON.

#### (District Court, N. D. New York. November 25, 1896.)

1. DEMURRAGE—ACQUIESCENCE BY SILENCE.

Claimants had for several years adopted the custom of chartering vessels late in the autumn, loading them with grain at Chicago, and having them lay up at Ogdensburg, N. Y., during the winter. Libelant's agent had applied to claimants in November to charter boats for Ogdensburg for the winter, at an advance on ordinary freight rates, and had chartered several on those terms. The last boat chartered was the Lewiston. Nothing was said about her being held during the winter, but the agent knew that she could not be promptly unloaded; and received the advanced rates of freight as for those previously chartered. *Held*, that libelant was bound by the agreement made respecting the other vessels, and claimants were not liable for demurrage for holding the Lewiston.

2. SAME—DETENTION—NEGLIGENCE.

Libelant's vessel, the Lewiston, reached Ogdensburg December 4th, with a cargo of grain. December 9th was Sunday, and the canal through which the Lewiston had to pass to reach the Upper Lakes was closed on the 11th. The only elevator at Ogdensburg was blocked, and five other vessels were ahead of the Lewiston, rendering it impossible to unload the latter before the canal closed. *Held*, that there was no negligence on the part of the charterers in detaining the Lewiston until the canal had closed.

This was a libel by John Green against the cargo of the steamer Lewiston to recover damages in the nature of demurrage.

The libelant's steamer Lewiston left Chicago, November 28, 1894, with a cargo of corn consigned to Ogdensburg, N. Y. She reached Ogdensburg about noon December 4th. She was not unloaded until after December 24th. In the meantime the Welland Canal had closed and it was impossible for her to reach the Upper Lakes in time to engage in the late commerce of 1894 and the early commerce of 1895. For this detention the libelant seeks to recover damages, insisting that by the contract of affreightment the cargo was to be unloaded without delay, and that 24 hours was a reasonable time in which to unload. The claimants insist that the agreement between them and the libelant was to the effect that the Lewiston should, if necessary, lay up for the winter at Ogdensburg with her cargo; that such contracts were customary during the last days of navigation and that this fact was well known to the libelant and his agent. There is but one available elevator at Ogdensburg and the claimants allege that at the time of the arrival of the Lewiston other vessels were ahead of her at the elevator and the storage bins were full. These vessels were as follows: The Argonaut arrived November 29th, the Josephine, Escanaba, Hopkins and McVittie arrived December 4th, but all of them before the Lewiston. At this time the elevator was blocked and had been since about the middle of November. The cargo of the Lewiston had not been ordered out for transportation to places farther east than Ogdensburg and, therefore, it was necessary to store the cargo at that place. On the 4th of December the elevator commenced unloading the cargo of the McVittie, which was ordered east and could pass through the elevator to the cars without going into the bins. The unloading was not finished until December 6th. On the 7th the elevator commenced unloading the Colonial, which had exchanged places with the Argonaut. The cargo of the Colonial was ordered east and simply passed through the elevator to the cars. The unloading was not finished until December 10th. The Rhoda Emily was leaking badly and her cargo was unloaded on the 11th of December. The Welland Canal closed on the same day, December 11th. The Ogdensburg elevator has sufficient capacity to unload a cargo like the Lewiston's in about nine hours. The voyage from Og-

densburg to the Welland Canal consumes from 18 to 20 hours. The passage through the canal consumes about 12 hours. The entire trip from Ogdensburg to Buffalo takes about 30 hours. The voyage from Buffalo to Chicago takes from 3½ to 4 days and from Ogdensburg to Chicago from 6½ to 7 days. The season of 1894 was an unusually open one. Navigation did not close until about December 25th. The contract of affreightment was made between Mr. Helm and Mr. Harris, the former representing the libelant and the latter the claimants. Mr. Helm admits that near the close of navigation each year it was the custom of the Ogdensburg Transit Company, one of the claimants, to charter a large number of boats to lay up at Ogdensburg with their cargoes during the winter, that he knew of the custom and chartered them himself. A few days prior to the contract with the Lewiston he had chartered three or four boats for claimants under these conditions. He further testifies that when Harris applied to him, a short time previous, he wished to charter vessels to remain with their grain at Ogdensburg during the winter and they agreed upon 4⅝ cents per bushel as a fair price for such service. This was the price agreed to be paid the Lewiston. It was one-half a cent more than the going price. Unless the Lewiston was an exception Helm chartered no boats for Ogdensburg that were not to lay up there during the winter. Mr. Harris testifies positively that he told Helm that the elevator was blocked and agreed to pay the increased price for the privilege of holding the grain during the winter. He had been compelled to refuse boats, offered at a less rate, to unload immediately at Ogdensburg. Helm knew this. Harris says, further, that all of the charters were made pursuant to this general agreement, which applied to the Lewiston precisely as it applied to all of the vessels. He testifies that the first intimation he had that there was any objection was after he returned to Ogsdenburg and presented the bill of lading with the holding clause inserted as follows: "Vessel to hold grain until such time as elevator can discharge cargo." The libelant alleges that he has been damaged in the sum of $5,000 by reason of the detention of his vessel. There is a balance of $1,206.82 due libelant for freight.

George Clinton, for libelant.
Louis Hasbrouck, for claimants.

COXE, District Judge (after stating the facts). The Lewiston reached Ogdensburg, December 4, 1894. December 9th was Sunday. The Welland Canal closed on the 11th. Were the claimants negligent in not unloading the Lewiston during the five working days intervening between the 4th and the 11th? The libelant concedes that unless she could have been released in time to enable her to pass through the canal to the Upper Lakes he suffered no damages. In order to test this question let it be assumed that the contract was, as the libelant insists, a general charter without stipulations on either side. There was then no provision for lay days or demurrage. The claimants were required to use ordinary diligence in unloading, having reference to the capacities of the port and the circumstances surrounding the transaction. The libelant knew that there was but one elevator at Ogdensburg, that the close of navigation was near at hand and that the voyage to Ogdensburg and back to Buffalo, with the best dispatch, would occupy 10 or 11 days. Through his agent he knew that the elevator was blocked and that several vessels loaded with grain had immediately preceded the Lewiston to Ogdensburg. He was not misled by the claimants. He entered upon the voyage with his eyes wide open. The onus is upon him to prove negligence. Has he done so? The evidence is clear and uncontradicted that with five vessels ahead of her and the elevator choked it

was impossible to unload the Lewiston before the Welland Canal closed for the winter. There was no room in the elevator. Had the cargo been passed through the elevator into cars the cars would have remained idle on the tracks for the grain had not been consigned to points further east. Besides, this could not have been done without giving the Lewiston an unfair advantage over other vessels which had arrived before her. There was nothing in the relations between the parties requiring the claimants to take a course so unusual, preferential and injurious to their own interests. But irrespective of these considerations the court has no doubt that the contract permitted the claimants to hold the vessel at Ogdensburg. W. M. Egan, of Chicago, was the duly-authorized agent of the Lewiston at that city. D. T. Helm was in Egan's employ. The contract was negotiated between Mr. Helm, representing the libelant, and Mr. George J. Harris, representing the claimants. No one else had anything to do with it. All this is undisputed. It had been the custom for several years prior to 1891 for the claimants to charter an extra fleet of boats late in the autumn of each year to carry grain to Ogdensburg and lay up there. Helm knew of this custom for he procured the charters himself. Indeed, he had made application to Harris, in November, to charter boats for Ogdensburg to lay up during the winter. For this service a price was agreed upon which was half a cent in advance of the ordinary freight. Several vessels were chartered by Helm just prior to the Lewiston to lay up during the winter and all were paid the increased price therefor, as was the Lewiston. The Lewiston was the last boat chartered. All that Helm can say is that nothing was said at the time the Lewiston was chartered in reference to her being held over at Ogdensburg. No one disputes this. It was not necessary to say anything. All of the facts regarding the blockade and the necessity for storage vessels were known to Helm. All of the conditions of the charter had previously been agreed on between him and Harris. When, therefore, on November 28th Helm told Harris "that he could put the Lewiston in to Ogdensburg" and Harris replied "Very well, you can send her to the Central Elevator" for a cargo, the agreement was complete. The conditions were thoroughly understood by each. Silence meant acquiescence in all of the conditions previously assented to. If either party wished to change or modify the contract it was his duty to speak out at the time. The attempt now to change the charter into one for quick dispatch cannot be tolerated. It comes too late. If Helm had intimated that the Lewiston could only be chartered upon the condition that she was to be unloaded by December 10th, Harris, knowing the impossibility of performing such a condition, would promptly have declined to load her. Hearing nothing of this kind he had a right to assume that the contract was like the preceding ones. In contemplation of law it was as if on November 20th Harris and Helm had agreed during the remaining days of navigation the one to furnish cargoes of grain and pay $4\frac{5}{8}$ cents per bushel and the other to furnish vessels to carry these cargoes to Ogdensburg and remain there during the winter. So long as noth-

324 77 FEDERAL REPORTER.

ing was said by either party to vary its terms the original agreement remained in force.

There can be no question as to the agreement between Harris and Helm and the court is inclined to the opinion that the libelant is bound by its terms. That Helm was his agent to procure a charter for the Lewiston is conceded. If the agency were a limited one the character of the restrictions is not disclosed. That there was nothing unusual or unilateral in the agreement to lay up at Ogdensburg is shown abundantly by the proof. It was a customary contract to make during the last days of navigation. Several vessels leaving Chicago before the Lewiston were glad to avail themselves of the extra half cent compensation. Helm could not foresee the extraordinary prolongation of the season of navigation. The agreement was a usual one and advantageous to his principal. In the absence of special instructions to the contrary it was within the scope of the agent's authority. But whether the libelant was bound by the contract or not there can be no dispute about the proposition that the claimants had an absolute right to assume that the contract was made as claimed, to rely upon it, and arrange their matters accordingly. They knew nothing to the contrary until the Lewiston was en route and within a few hours of Ogdensburg. It was then too late to make any change.

The claimants cannot be charged with fault. They acted in good faith. If there were negligence anywhere it must be imputed to the libelant or his agent. Upon no theory of the evidence can he recover damages. The libelant is entitled to a decree for the unpaid balance of freight, amounting to $1,206.82, with interest and costs.